HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

Terrance J. Wikberg (SBN MD Bar 17978)
*Pro Hac Vice forthcoming*
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006
Telephone: (202) 469-5627
Facsimile: (202) 955-5564
Email: terry.wikberg@hklaw.com

Amy E. Simpson (SBN 241090)
HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Telephone: (310) 201-8900
Facsimile: (310) 201-8922
Email: amy.simpson@hklaw.com

Morgan J. Delabar (SBN TX Bar 24116625)
*Pro Hac Vice forthcoming*
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, TX 75201
Telephone: (214) 964-9421
Facsimile: (214) 964-9501
Email: morgan.delabar@hklaw.com

Attorneys for Plaintiff
SUNGROW USA CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUNGROW USA CORPORATION, a Delaware corporation<br><br>Plaintiff,<br><br>vs.<br><br>GRIDSCALE SOLUTIONS, LLC, a Texas limited liability company<br><br>Defendant. | Case No. 8:26-cv-3230<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sungrow USA Corporation ("Sungrow" or "Plaintiff") files this Complaint for Declaratory Judgment against Defendant Gridscale Solutions, LLC ("Gridscale" or "Defendant"). By and through its Complaint, Sungrow seeks a declaration that Sungrow does not directly or indirectly infringe United States Patent Nos. 8,796,884 (the "'884 Patent"), 8,842,454 (the "'454 Patent"), 9,225,256 (the "'256 Patent"), 8,279,642 (the "'642 Patent"), 10,516,270 (the "'270 Patent"), 11,641,110 (the "'110 Patent"), 9,160,408 (the "'408 Patent"), (collectively, the "Patents in Suit"), either literally or under the doctrine of equivalents, and that claims of the Patents in Suit are invalid under 35 U.S.C. §§ 102, 103 and/or 112.

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment of non-infringement and invalidity of the Patents in Suit and pursuant to the patent laws of the United States, Title 35 of the United States Code.

2. Sungrow requests this relief based on Defendant's infringement assertions and licensing demands to Sungrow and its customers, in which Defendant has accused Sungrow, its "subsidiaries and affiliates," and at least some of Sungrow's customers of infringing the Patents in Suit. Defendant has made licensing demands to Sungrow, as well as multiple of its customers, and filed a suit for patent infringement against on one such customer based on its use of Sungrow produced products.

3. An actual and justiciable controversy therefore exists between Sungrow and Defendant concerning the Patents in Suit under 28 U.S.C. §2201-2202 and as to whether Sungrow's products infringe any valid claim of the Patents in Suit.

**THE PARTIES**

4. Sungrow USA Corporation is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 3200 Park Center Drive, Suite 850, Costa Mesa, California 92626.

/ / /

/ / /

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

5. On information and belief, Gridscale is a limited liability company organized and existing under the laws of the state of Texas, with its principal place of business located at 6600 Chase Oaks Boulevard, Suite 150, Plano, Texas 75023.

**JURISDICTION AND VENUE**

6. This action arises under the Declaratory judgment Act, 28 U.S.C. § 2201 *et seq*., and under the patent laws of the United States, Title 35 of the United States Code.

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201(a), 2202, and the patent laws of the United States. 35 U.S.C. *et seq*.

8. An immediate, real, and justiciable controversy exists between Sungrow and Defendant as to whether Sungrow has infringed the Patents in Suit. As described in detail below, this controversy arises out of Defendant's baseless infringement assertions and licensing demands to Sungrow and its customers, in which Defendant accuse Sungrow of infringing the Patents in Suit and claims that Sungrow requires a license to Defendant's patent portfolio. Defendant's efforts have gone as far as to accuse Sungrow's products in active litigation against one of Sungrow's customers. Sungrow, accordingly, requests a judicial determination of its rights regarding the Patents in Suit. Because this action presents an actual controversy with respect to the Patents in Suit, the court may grant the declaratory relief sought pursuant to 28 U.S.C. § 2201 *et seq*.

9. This Court has personal jurisdiction over Defendant by virtue of their sufficient minimum contacts with this forum. Defendants, directly or through their agents and alter egos, have regularly conducted business activities in California and directed their activities at residents in this state and district, including Sungrow, and this action arises out of and relates to those activities.

10. Among other things, Defendant purposefully directed allegations of patent infringement to Sungrow, and its subsidiaries and affiliates, which has its

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

principal place of business in this district. Sungrow's headquarters is located in the Central District of California, where many of its business operations and engineering employees operate from. Sungrow sells its products all throughout the United States, including to customers located within this judicial district.

11. Among other things, Defendants purposefully directed allegations of patent infringement to Sungrow, which resides in this District. Sungrow sells inverters and other products used in BESS systems which Defendants have accused of patent infringement. The enforcement campaign against Sungrow began by targeting some of Sungrow's customers, but as of September 22, 2026 included sending a letter directly to Sungrow at its headquarters in Costa Mesa, California alleging that Sungrow and its affiliates and subsidiaries infringe multiple U.S. Patents allegedly owned by Defendant by selling, offering to sell, and importing into the U.S. purportedly infringing products. Defendant made these allegations with the goal of extracting licensing fees from Sungrow.

## DIVISIONAL ASSIGNMENT

12. Pursuant to Civil L.R. 3-2(c) and 3-5(b), this is an Intellectual Property Actions subject to assignment on a district-wide basis.

## FACTUAL ALLEGATIONS

### The Patents in Suit

13. The '884 Patent is entitled "Energy conversion systems with power control". The Patent states on its cover that it was issued on August 5, 2014 and names Ravindranath Naiknaware, Vincenzo DiTommaso, Triet Tu Le, Robert D. Batten, and Terri Shreeve Fiez as its inventors. The Patent also states that the initial assignee of the patent was SolarBridge Technologies, Inc. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit A**.

14. The '454 Patent is entitled "Inverter array with localized inverter control". The Patent states on its cover that it was issued on September 23, 2014 and names Brian Johnson, Phillip Krein, Alexander Gray, and Patrick L. Chapman as its

inventors. The Patent also states that the initial assignee of the patent was SolarBridge Technologies, Inc. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit B**.

15. The ’256 Patent is entitled “Apparatus and method for controlling DC-AC power conversion”. The Patent states on its cover that it was issued on December 29, 2015 and names Patrick L. Chapman, Brian T. Kuhn, Robert S. Balog, Jonathan W. Kimball, Phillip T. Krevin, Alexander Gray, and Trishan Esram as its inventors. The Patent also states that the initial assignee of the patent was SunPower Corporation. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit C**.

16. The ’642 Patent is entitled “Apparatus for converting direct current to alternating current using an active filter to reduce double-frequency ripple power of bus waveform”. The Patent states on its cover that it was issued on October 2, 2012 names Patrick L. Chapman, Brian T. Kuhn, Robert S. Balog, Jonathan W. Kimball, Phillip T. Krein, and Alexander Gray as its inventors. The Patent also states that the initial assignee of the patent was SolarBridge Technologies. Inc. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit D**.

17. The ’270 Patent is entitled “Method and apparatus for coordination of generators in droop controlled microgrids using hysteresis”. The Patent states on its cover that it was issued on December 24, 2019 and names Donald Richard Zimmanck, Martin Fornage, Michael J. Harrison, and Christopher Rowe as its inventors. The Patent also states that the initial assignee of the patent was Enphase Energy, Inc. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit E**.

18. The ’110 Patent is entitled “Apparatus and method for reactive power control”. The Patent states on its cover that it was issued on May 2, 2023 and names Michael J. Harrison as its inventor. The Patent also states that the initial assignee of

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

the patent was Enphase Energy, Inc. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit F**.

19. The '408 Patent is entitled "System and method for establishing communication with an array of inverters". The Patent states on its cover that it was issued on October 13, 2015 and names Edward Krohne and Brian T. Kuhn as its inventors. The Patent also states that the initial assignee of the patent was SunPower Corporation. Defendant purports to own the Patent by assignment. A copy of the patent is attached hereto as **Exhibit G**.

**Dispute Between Sungrow and Defendant**

20. Established in 1997, Sungrow is a global leader in the renewable or clean energy business. Its mission is to provide "Clean Power for All" through innovating and offering clean energy conversion technology. Sungrow works to develop clean energy conversion products and systems across all major alternative energy options, including solar, wind, and hydrogen.

21. Sungrow created its first grid-connected inverter in 2003 and has continued to innovate in this space ever since. An inverter is important to alternative energy because alternative energy is often generated as direct current electricity that can be stored in batteries where the inverter converts this direct current energy into alternating current energy which syncs with electric grids and powers households across the U.S. The inverter works to match the voltage, frequency, and phase of the local utility grid so that energy produced using alterative means, such as sun or wind, can be fed directly into the electrical grid. Advanced inverters can also be used to manage the flow between the source of the energy and battery banks so that energy can be stored for future use. At least some of the accused products are some of Sungrow's inverter products, made specifically for use in battery energy storage systems ("BESS").

22. Upon information and belief, Defendant is a non-practicing entity that acquired the Patents in Suit as a part of a 50-patent portfolio from Enphase Energy in

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

May of 2026. The portfolio includes patents on technologies relating to distributed energy systems, inverter technology, power management, and grid-connection infrastructure. However, unlike Sungrow's products the Patents in Suit are directed to single phase AC technology and not three-phase technology.

23. Shortly after acquiring the Enphase Energy patent portfolio, Defendant filed suit in the Eastern District of Virginia against The AES Corporation ("AES"), a customer of Sungrow. *See GridScale Solutions, LLC v. The AES Corporation,* Cause Nos. 1:26-cv-01403-MSN-WEF and 1:26-cv-03030-MSN-WEF (E.D. Va.). AES sent Sungrow a notice of indemnification stemming from infringement allegations made in that lawsuit concerning Sungrow products AES uses in its BESS systems on September 25, 2026. This indemnification request is attached as **Exhibit H**. These lawsuits specifically accuse AES of infringing the '642, '884, and '454 Patents.

24. This letter from AES came just days after Sungrow received a letter straight from Defendant on September 22, 2026. The September 22, 2026 letter is attached as **Exhibit I**. In this letter, Defendant accuses Sungrow of patent infringement and demanding that Sungrow engage in licensing discussions with Defendant in order to keep selling its inverter products without a risk of litigation. This letter specifically accuses multiple systems and components offered by Sungrow to its customers, including: inverters, converters, power control systems, battery energy storage systems ("BESS") and controllers used within those systems. Defendant specifically and expressly accuses Defendant of infringing the '884, '454, '256, '270, '110, '618, and '654 Patents.

25. In the September 22, 2026 letter, Defendant expressly identified each of the following products and directly accused each of these products of infringing claims of Asserted Patents: Sungrow's PowerTitan 2.0/3.0 products with various additional components, including the ST2752UX-US and SC5000UD-MV-US, SC5000UD-MV-US-P3 and SC4000UD-MV-US power conversion systems (accused of infringing claims of the '884 Patent and the '110 Patent); the PowerTitan 2.0/3.0

products with various additional components, including the ST2752UX-US, LC1000 controller, EMS3000 plant energy management system and SC5000UD-MV-US, SC5000UD-MV-US-P3 and SC4000UD-MV-US power conversion systems (accused of infringing claims of the ’454 Patent and the ’256 Patent); Sungrow’s PowerTitan products with various additional components, including the SC5000UD-MV-US, SC5000UD-MV-US-P3 and SC4000UD-MV-US power conversion systems, along with the Sungrow products SC2400, SC2750, SC3150, SC3450, SC4000UD-MV-US or the SG3400HV-MV-20, SG4400UD-MV-20 and MVS4480-US products (accused of infringing claims of the ’642 Patent); the Sungrow Power Titan products with the EMS3000 management system and/or the LC1000 and PPC1000 controllers (accused of infringing claims of the ’270 Patent); and the Sungrow COM100/COM100A, D and E communication products with the Logger3000 data logger and 400 Units (accused of infringing claims of the ’408 Patent).

26. A few days later, on September 28, 2026, Sungrow received a letter from another customer alerting it that Defendant has sent a demand alleging that certain energy storage, solar, and solar-plus-storage systems that incorporated Sungrow products were accused of infringing the ’884, ’454, ’256, ’270, ’110, ’618, and ’642 Patents and demanding that the customer take out a license for use of these patents. That customer requested that Sungrow tender defense to them pursuant to an agreement between it and Sungrow.

27. And yet another Sungrow customer, received an additional demand letter on August 24, 2026 from Defendant making similar accusations that this customer’s power systems, that incorporate Sungrow products, infringe the ’884, ’454, ’256, ’642, ’964, and ’270 Patents.

28. It is clear from the correspondence detailed above that Defendant is engaged in an unreasonable enforcement campaign against Sungrow and its customers based on its newly acquired portfolio of patents. These widespread licensing demands evidence a real, immediate and justiciable controversy exists

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

between the parties about the validity, and possible infringement, of the Patents in Suit.

29. In order to protect its products and its customers, Sungrow files this declaratory judgment action for non-infringement and invalidity of the Patents in Suit.

## THE TECHNOLOGY OF THE PATENTS IN SUIT

30. The technology of the Patents in Suit has little or nothing to do with Sungrow's accused products and systems because they are directed to a fundamentally different power conversion technology.

31. While the Patents in Suit are generally directed to providing AC power to an electrical load or grid, they are all directed to providing single-phase power to a load or grid.

32. Single-phase power uses a single alternating current (AC) waveform to a load and is the standard power for homes and small offices, while three-phase AC power uses three AC waveforms that are offset by 120 degrees of phase and is standard for commercial and industrial facilities.

33. All of the Patents in Suit are directed to systems, architecture, topology and issues that are associated with single-phase or small/residential power conversion technologies and have little or no relevance to three-phase power conversion technologies.

34. For example, the '642 Patent is expressly directed to using an active filter to reduce "double-frequency ripple power" of an electrical bus waveform. "Double-frequency ripple power" (which can sometimes be called 2ω ripple power or double-line-frequency ripple power) is an oscillating power pulsation that occurs at twice the frequency of the AC line (for example, 100 Hz in 50 Hz grid systems or 120 Hz in 60 Hz grid systems) in *single*-phase AC-DC or DC-AC power conversion systems. Double-frequency ripple power does not exist and does not occur in three-

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

phase power systems, and this technology has no relevance to any of Sungrow's products or systems.

35. Similarly, the '256 Patent is directed to using a "galvanically isolated uni-polar bus" connected to an input converter. However, the use of a "galvanically isolated uni-polar bus" is primarily used in single-phase power conversion systems. None of Sungrow's products, which are all directed to three-phase power conversion technologies use or employ galvanic isolation or a "galvanically isolated uni-polar bus".

36. Further, the '270 Patent is directed to coordinating power generators in droop controlled microgrid systems. A "microgrid" is a small, localized energy system that can generate, store, and distribute electricity independently for a small load or isolated building or region, and can be connected to the main regional power grid. However, because of the typical size of a microgrid, these technologies are most often single-phase technologies. None of Sungrow products or systems are used in "microgrid" applications.

**COUNT ONE**

**(Declaration of Non-Infringement of the '884 Patent)**

37. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 36 of this Complaint as if fully set forth herein.

38. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 6, 7, 9, 12, 13, 14, 16 and 19 of the '884 Patent.

39. The '884 Patent has 2 independent claims (claims 1 and 13). Independent claim 1 is representative and reads as follows:

> 1. A system comprising:
>
> a converter to transfer power between a power source and a load having a fluctuating power demand, the converter comprising a direct current-to-alternating current (DC-AC) output bridge configured to deliver output power to a utility grid;
>
> a controller to control the DC-AC output bridge of the converter to generate an AC power output, the controller comprising:

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

> (i) a synchronization function having an input to receive a voltage sensor signal indicative of a grid voltage of the utility grid, the synchronization function configured to generate a phase signal indicative of a phase angle of the voltage sensor signal;
>
> (ii) a distortion mitigation function to receive the phase signal from the synchronization function and a current sensor signal indicative of a grid current of the utility grid, the distortion mitigation function configured to generate a magnitude signal as a function of the phase signal and the current sensor signal, and
>
> (ii) a modulator to receive the phase signal from the synchronization function and the magnitude signal from the distortion mitigation function, the modulator configured to generate a modulation signal to control the DC-AC output bridge as a function of the phase signal and the magnitude signal.

40. Sungrow has not infringed and does not infringe any valid claim of the ’884 Patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’884 Patent. By way of illustration none of the identified and accused Sungrow products or systems utilize the claimed (a) “synchronization function” where the synchronization function generates “a phase signal indicative of a phase angle of the voltage sensor signal”; (b) “distortion mitigation function” where the distortion mitigation function generates “a magnitude signal as a function of the phase signal and the current sensor signal”; and (c) the claimed “modulator” which generates “a modulation signal to control [a] DC-AC output bridge as a function of the phase signal and the magnitude signal.”

41. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’884 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’884 Patent.

/ / /

/ / /

42. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’884 patent, either directly or indirectly.

**COUNT TWO**

**(Declaration of Invalidity of the ’884 Patent)**

43. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 42 of this Complaint as if fully set forth herein.

44. Claims of the ’884 Patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to U.S. Patent No. 5,057,989, and the knowledge of a person of ordinary skill in the art.

45. Further, the claims of the ’884 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. Under step one of the *Alice* framework, the “focus of the claims is collecting information, analyzing it mathematically, and acting on the result. For example, claim 1 recites a “controller” made of three “functions.” First, a “synchronization function” receives “a voltage sensor signal indicative of a grid voltage” and generates “a phase signal indicative of a phase angle” of that signal. Second, a “distortion mitigation function” receives the phase signal and “a current sensor signal” and generates “a magnitude signal as a function of the phase signal and the current sensor signal.” Third, a “modulator” generates “a modulation signal . . . as a function of the phase signal and the magnitude signal.” Independent claim 13 recites the same three functions for a controller standing alone, with no output bridge at all. Stripped of labels, these claims describe receiving measured data (grid voltage and current), calculating values from that data (a phase angle and a magnitude), and outputting a control signal derived from those calculations. The Federal Circuit has repeatedly held this kind of process

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

to be an abstract idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (claims to collecting, analyzing, and displaying information about a power grid were abstract).

46. The claims are also purely result-oriented. They require that each signal be generated "as a function of" other signals but never say how any function computes its output. The dependent claims make the abstraction plainer still. They add only mathematical operations by another name. Claim 1's reference to a "converter" and a "DC-AC output bridge configured to deliver output power to a utility grid" does not change this conclusion. This language merely limits the abstract idea to a particular technological environment.

47. At *Alice* step two, the claims contain no "inventive concept" sufficient to "transform" the abstract idea into a patent-eligible application. The '884 Patent specification describes the claimed building blocks as conventional, generic components. For example, it states that the synchronization function may be a "phase locked loop circuit" or a "delay locked loop circuit," and the claims recite those same options. It also describes output bridges, energy storage capacitors, and "conventional central inverter[s]" as known elements of grid-tied power systems. The specification further confirms that its principles apply to a wide range of systems, including "electric and hybrid cars," "motors drives of all kinds," "battery chargers," and "induction heating." That breadth shows the claims are not tied to any specific improvement in how a particular machine operates. Instead, they claim the abstract idea of controlling an output on the basis of measured phase and magnitude data, implemented with whatever generic sensors, controllers, and modulators may be used. The claims also do not combine these elements in any unconventional arrangement. They recite the expected sequence of synchronizing to the grid, computing a correction, and modulating the output. Reciting that sequence is the abstract idea itself and cannot also supply the inventive concept. Because the claims

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

of the ’884 Patent are directed to an abstract idea and add nothing inventive, they are invalid under 35 U.S.C. § 101.

48. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the ’884 Patent are invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’884 Patent.

**COUNT THREE**

**(Declaration of Non-Infringement of the ’454 Patent)**

49. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 48 of this Complaint as if fully set forth herein.

50. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 3, 10, 11, 12, 17, 18 and 19 of the ’454 Patent.

51. The ’454 Patent has 3 independent claims (claims 1, 10 and 17). Independent claim 1 is representative and reads as follows:

> 1. An apparatus to deliver alternating current (AC) power, the apparatus comprising:
>
> a plurality of inverters configured to receive direct current (DC) power from a respective DC power source and respectively provide AC power to an AC load;
>
> a primary controller configured to generate a primary control signal based on total AC current and total AC voltage being delivered to the AC load by the plurality of inverters; and
>
> a plurality of secondary controllers configured to each receive the primary control signal and produce a respective secondary control signal based on the primary control signal, wherein the respective secondary control signal for each of the plurality of secondary controllers controls a corresponding one of the plurality of inverters to provide the respective AC power.

52. Sungrow has not infringed and does not infringe any valid claim of the ’454 Patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’454 Patent. By way of illustration: the products accused by Defendant do not contain (a) a “plurality of inverters” that receive a DC signal from a respective power

source; (b) a “primary controller” that generates a “primary control signal based on total AC current and total AC voltage being delivered to the AC load by the plurality of inverters,”; and/or (c) a “plurality of secondary controllers” that produce “respective secondary control signal[s] based on the primary control signal.”

53. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’454 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or / / /
more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’454 Patent.

54. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’454 patent, either directly or indirectly.

**COUNT FOUR**

**(Declaration of Invalidity of the ’454 Patent)**

55. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 54 of this Complaint as if fully set forth herein.

56. Claims of the ’454 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to U.S. Patent No. 8,345,454; *High Quality Power Generation through Distributed Control of a Power Park Microgrid”*, Prodanovic, et al., IEEE Transactions on Industrial Electronics, Vol. 53, No. 5, October 2006.; Japanese Publication No. JP2006320149 to Mizuno; and/or Chinese Publication No. CN101697422A to Luo., and the knowledge of a person of ordinary skill in the art.

57. Further, the claims of the ’454 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. The claims of



HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

’454 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea. Under step one of the *Alice* framework, the claims focus on hierarchical, master-and-subordinate control: one controller measures an aggregate output and issues a command, and subordinate controllers adjust that command for their own units. Claim 1 recites a “primary controller configured to generate a primary control signal based on total AC current and total AC voltage being delivered to the AC load.” It then recites “a plurality of secondary controllers configured to each receive the primary control signal and produce a respective secondary control signal based on the primary control signal,” with each secondary signal controlling “a corresponding one of the plurality of inverters.” Method claim 10 is broader still. It requires only “generating a first control signal in response to the AC power,” “generating a plurality of second control signals in response to the first control signal,” and “controlling respective output AC power of each inverter” based on those signals. Claim 17 recites the same steps as “instructions” on a “computer-readable medium” executed by “a processor.” These claims cover the abstract concept of collecting information about a system’s total output, deriving a command from it, and distributing that command to subordinate units, each of which adjusts it. The claims never explain how any control signal is calculated from its inputs. They require only that each signal be “based on” or “in response to” another. The Federal Circuit has held that claims of this result-oriented kind, which collect and analyze information about an electric power system, are directed to an abstract idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–56 (Fed. Cir. 2016). The dependent claims add only mathematical manipulation. Mathematical manipulation of this kind is itself abstract.

58. At *Alice* step two, the claims supply no inventive concept that transforms the abstract idea into a patent-eligible application. The only physical elements are generic components used for their ordinary purposes. Those components are “inverters” that convert DC power into AC power, “controllers” that generate

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

signals, and, in at least claims 17 a generic "processor" and "computer-readable medium." The dependent claims likewise recite conventional elements. The specification describes the local controllers using standard tools, including a "PI controller" and comparison of control signals to "carrier waveforms." It also concedes that "[t]hose of ordinary skill in the art may readily devise their own implementations" of the disclosed apparatuses and methods. Arranging conventional components into a primary-secondary control hierarchy only restates the abstract idea. It does not add an unconventional technical solution, and confining the idea to solar inverters is a field-of-use limitation that cannot confer eligibility. Further, implementing an idea as software "instructions" on a generic processor fares no better. Because every claim of the '454 Patent is directed to an abstract idea and adds no inventive concept, the claims are invalid under 35 U.S.C. § 101.

59. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the '454 Patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '454 Patent.

**<u>COUNT FIVE</u>**

**(Declaration of Non-Infringement of the '256 Patent)**

60. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 59 of this Complaint as if fully set forth herein.

61. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 5, 6, 7, 13, 15, 16 and 17 of the '256 Patent.

62. The '256 Patent has 2 independent claims (claims 1 and 13). Independent claim 1 is representative and reads as follows:

> 1. An apparatus for controlling the delivery of power from a unipolar input source to an alternating-current (AC) grid at a grid voltage and grid frequency, the apparatus comprising:
>
> an inverter comprising:
>
> an input converter configured to deliver power from the unipolar input source to a galvanically isolated unipolar bus;

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

an active filter configured to supply energy to and absorb energy from the unipolar bus; and

an output converter configured to deliver power from the unipolar bus to the AC grid, and

an inverter controller configured to maintain a voltage of the unipolar bus at a pre-determined value, the inverter controller comprising:

an input converter controller to control a current delivered by the input converter to the unipolar bus;

an output converter controller to control the output converter to deliver power to the AC grid; and

an active filter controller to control the active filter to supply time-varying power to the output converter.

63. Sungrow has not infringed and does not infringe any valid claim of the ’256 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’256 Patent. By way of illustration, all of the claims of the ’256 Patent require the use of a “galvanically isolated unipolar bus.” None of the Sungrow products identified by Defendant as infringing the ’256 Patent use, employ or contain a “galvanically isolated unipolar bus” as claimed.

64. Further, Defendant has alleged that Sungrow infringes at least claims 5, 6, and 7 of the ’256 Patent, which all depend on claim 4. However, Defendant has not alleged any infringement of claim 4, and as such, necessarily there can be no infringement of claims 5, 6 and 7 if claim 4 is not infringed.

65. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’256 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’256 Patent.

/ / /

/ / /

66. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’256 patent, either directly or indirectly.

**<u>COUNT SIX</u>**

**(Declaration of Invalidity of the ’256 Patent)**

67. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 66 of this Complaint as if fully set forth herein.

68. Claims of the ’256 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to *Line-Interactive UPS Using a Fuel Cell as the primary Source,* Tao et al., IEEE Transactions on Industrial Electronics, Vol. 55, No. 8, August 2008; *A Single-Phase Grid-Connected Inverter with a Power Decoupling Function,* Shinjo et al., 2007 IEEE Power Electronics Specialists Conference, June 17-21, 2007; and/or *Fly-Back-Type Single Phase Utility Interactive Inverter with Power Pulsation Decoupling on the DC Input for an AC Photovoltaic Module System,* Shimizu et al., IEEE Transactions on Power Electronics, Vo. 21, Issue 5, September 2006, and the knowledge of a person of ordinary skill in the art.

69. Further, the claims of the ’256 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. The claims of ’256 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea. Under step one of the *Alice* construct the claims focus on the abstract concept of dividing a power-delivery task among components and directing each to achieve a desired result. Independent claim 1 recites an “inverter controller configured to maintain a voltage of the unipolar bus at a pre-determined value.” That controller consists of an “input converter controller to control a current,” an “output converter controller to control the output converter to deliver power,” and an “active filter

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

controller to control the active filter to supply time-varying power." Independent method claim 13 likewise requires "controlling the operation of the input converter to deliver substantially all the average power," "controlling the active filter to deliver substantially all the time-varying power," and "regulating the unipolar bus voltage to a first pre-determined value." These limitations state goals: allocate average power to one component, allocate time-varying power to another, and hold a voltage at a setpoint. They do not recite any particular way of achieving those goals. The Federal Circuit has held that claims reciting a desired result without the means of achieving it are directed to an abstract idea, even where the claims operate on physical systems. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1294–95, 1302 (Fed. Cir. 2020); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–56 (Fed. Cir. 2016). The dependent claims confirm the point by adding sensing a voltage, "comparing" it to a "pre-determined value," and controlling a current "based upon the comparison." Others add a mathematical relationship and threshold "logic" that sets a current's polarity depending on whether a voltage is above or below "pre-determined" limits. Collecting measurements, comparing them to targets, and applying formulas are classic abstract mental and mathematical steps.

70. At *Alice* step two, the claims contain no inventive concept sufficient to transform this abstract idea into patent-eligible subject matter. The claimed hardware consists of an "input converter," an "active filter," and an "output converter," each recited only by the function it performs. The specification confirms these are conventional. It states that "any of a wide variety of known non-resonant and resonant switching power converter topologies may be used in place of the specific converter embodiments described." It also states that the controllers "may be implemented as discrete circuits or in the form of software code and/or logical instructions that are processed by a microprocessor, digital processor, DSP or other means." And it explains that filters and PI controllers "may be implemented in processor code using, e.g., the Tustin transformation and/or other known conversion

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

methods." The specification further concedes that "[t]hose of ordinary skill in the art may readily devise their own implementations" of the disclosed apparatuses and methods. Applying an abstract control scheme with conventional components in the field of solar-to-grid inverters is a field-of-use limitation that cannot confer eligibility. Because the claims of the '256 Patent are directed to an abstract idea and recite no inventive concept, they are invalid under 35 U.S.C. § 101.

71. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the '256 Patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '256 Patent.

**<u>COUNT SEVEN</u>**

**(Declaration of Non-Infringement of the '642 Patent)**

72. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 71 of this Complaint as if fully set forth herein.

73. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 10, 11, 12, 26 and 27 of the '642 Patent.

74. The '642 Patent has 3 independent claims (claims 1, 30 and 38). Independent claim 1 is representative and reads as follows:

> 1. An inverter for converting an input direct current (DC) waveform from a DC source to an output alternating current (AC) waveform for delivery to an AC grid, the inverter comprising:
>
> an input converter electrically coupled to a power bus and including a transformer, the input converter being configured to convert the input DC waveform to a bus waveform supplied to the power bus;
>
> an output converter electrically coupled to the power bus and configured to convert the bus waveform to the output AC waveform at a grid frequency; and
>
> an active filter electrically coupled to the power bus and configured to reduce a double-frequency ripple power of the bus waveform by supplying power to and absorbing power from the power bus to maintain a bus voltage to track a desired bus voltage signal,
>
> wherein the active filter comprises a switching circuit coupled to an energy storage device.

75. Sungrow has not infringed and does not infringe any valid claim of the ’642 Patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’642 Patent. By way of illustration all of the asserted claims require “an active filter electrically coupled to the power bus and configured to reduce a double-frequency ripple power of the bus waveform by supplying power to and absorbing power from the power bus to maintain a bus voltage to track a desired bus voltage signal.” None of the accused Sungrow products contain or use an “active filter” to “reduce a double-frequency ripple power of the bus waveform” because none of the Sungrows systems or products are coupled to any load or grid that have a DC bus with waveform having a “double-frequency ripple power.”

76. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’642 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’642 Patent.

77. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’642 patent, either directly or indirectly.

## COUNT EIGHT

### (Declaration of Invalidity of the ’642 Patent)

78. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 77 of this Complaint as if fully set forth herein.

79. Claims of the ’642 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

but not limited to *Line-Interactive UPS Using a Fuel Cell as the primary Source,* Tao et al., IEEE Transactions on Industrial Electronics, Vol. 55, No. 8, August 2008; *A Single-Phase Grid-Connected Inverter with a Power Decoupling Function,* Shinjo et al., 2007 IEEE Power Electronics Specialists Conference, June 17-21, 2007; and/or *Fly-Back-Type Single Phase Utility Interactive Inverter with Power Pulsation Decoupling on the DC Input for an AC Photovoltaic Module System,* Shimizu et al., IEEE Transactions on Power Electronics, Vo. 21, Issue 5, September 2006, and the knowledge of a person of ordinary skill in the art.

80. Further, the asserted claims of the ’642 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. At step one of the *Alice* framework, the claims are directed to a natural law and abstract idea: the principle that the double-frequency ripple power in a single-phase DC-to-AC conversion can be cancelled by an energy store that supplies power to and absorbs power from the intermediate bus. Independent claim 1 claims this principle as a desired result. It recites an “active filter . . . configured to reduce a double-frequency ripple power of the bus waveform by supplying power to and absorbing power from the power bus to maintain a bus voltage to track a desired bus voltage signal.” There is no recitation of a specific circuit, control algorithm, or way of achieving that result. These result-focused functional claims are of the kind rejected in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016).

81. At step two of *Alice*, the asserted claims contain no inventive concept that turns this principle into a patent-eligible application. The remaining elements are generic, conventional building blocks of power electronics, each described only by its ordinary function: an “input converter” with a “transformer,” an “output converter” that converts the bus waveform to AC “at a grid frequency,” a “power bus,” and a “switching circuit coupled to an energy storage device.” The specification itself admits that these components are interchangeable and well known. It states that “any of a wide variety of known non-resonant and resonant switching power converter

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

topologies may be used in place of the specific converter embodiments described herein." It states that "other types of switches may be used (e.g., bipolar transistors, IGBTs)." It also says the disclosed bridge circuits may take "other circuit topologies." The specification further states that the claimed controllers "may be implemented as discrete circuits or in the form of software code and/or logical instructions that are processed by a microprocessor, digital processor, DSP or other means." The asserted dependent claims add only further conventional features or field-of-use limits, none of which supplies an inventive concept. Because the claims of the '642 Patent are directed to an abstract idea and recite no inventive concept, they are invalid under 35 U.S.C. § 101.

82. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the '642 Patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '642 Patent.

## COUNT NINE

## (Declaration of Non-Infringement of the '270 Patent)

83. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 82 of this Complaint as if fully set forth herein.

84. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 7 and 15 of the '270 Patent.

85. The '270 Patent has 3 independent claims (claims 1, 7 and 15). Independent claim 1 is representative and reads as follows:

> 1. A method for autonomously operating a microgrid power generator comprising:
> obtaining a first measurement of at least one grid parameter of a microgrid transmission line coupled to a power generator in a microgrid;
>
> comparing the first measurement to a turn-on threshold;
>
> initiating, when the first measurement is less than the turn-on threshold, power generation by the power generator;

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

> obtaining, after initiation of the power generation, a second measurement of the at least one grid parameter of the microgrid transmission line;
>
> comparing the second measurement to a shut-down threshold that is greater than the turn-on threshold; and
>
> stopping, when the second measurement exceeds the shut-down threshold, the power generation by the power generator.

86. Sungrow has not infringed and does not infringe any valid claim of the ’270 Patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’270 Patent. By way of illustration all of the asserted claims are directed to microgrid power generator using at least a microgrid transmission line coupled to a microgrid. None of the accused or identified Sungrow products are directed to, or otherwise used in or in connection with any microgrid situation and as a result at least do not have a microgrid transmission line.

87. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’270 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’270 Patent.

88. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’270 patent, either directly or indirectly.

## COUNT TEN

### (Declaration of Invalidity of the ’270 Patent)

89. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 88 of this Complaint as if fully set forth herein.

90. Claims of the ’270 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the

asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to US Publication No. 2015/0069845A1 to Leibel, and the knowledge of a person of ordinary skill in the art.

91. Further, the asserted claims of the ’270 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. At step one of the *Alice* framework, the claims are directed to the abstract idea of collecting information, comparing it to two thresholds, and acting on the result. That is, they claim turning a generator on when a measured value drops below a low threshold and turning it off when the value rises above a higher threshold. Independent method claim 1, apparatus claim 7, and computer-readable-medium claim 15 recite the same five functional steps in nearly identical words. Each claim (1) obtains “a first measurement of at least one grid parameter,” (2) compares it “to a turn-on threshold,” (3) initiates power generation “when the first measurement is less than the turn-on threshold,” (4) obtains a second measurement and compares it “to a shut-down threshold that is greater than the turn-on threshold,” and (5) stops generation “when the second measurement exceeds the shut-down threshold.” This is the familiar hysteresis, or “dead-band,” control logic of an ordinary household thermostat, and a person could carry it out mentally or with pencil and paper. The Federal Circuit has repeatedly held that claims to gathering information about a power grid, analyzing it, and reporting or acting on the results are directed to an abstract idea. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). The specification confirms that the alleged advance is the threshold logic itself. It describes the invention as a “hysteretic droop curve having a shut-down frequency that is higher than the turn-on frequency” that keeps the generator from turning on and off over and over. It also concedes that droop control and offset droop settings were already known techniques.

92. At step two of *Alice*, the asserted claims contain no inventive concept that turns this abstract idea into a patent-eligible application. The claims recite no

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

particular sensor, circuit, or generator structure. They require only a generic "generator controller," a "processor," or a "non-transitory computer readable medium," which perform the abstract steps in their ordinary way. The specification describes these components as generic and conventional. It says the controllers comprise "one or more conventionally available microprocessors or microcontrollers," "may be implemented using a general purpose computer," use "well known circuits," and run "commercially available operating systems such as . . . LINUX." It also identifies a conventional phase lock loop as the means of measuring grid frequency, and it explains that the "microgrid generator is a conventional generator," such as a diesel generator. The asserted dependent claim only narrows the abstract idea further, and none of them supplies an inventive concept. Because the claims of the '270 Patent are directed to an abstract idea and recite no inventive concept, they are invalid under 35 U.S.C. § 101.

93. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the '270 Patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '270 Patent.

## COUNT ELEVEN

### (Declaration of Non-Infringement of the '110 Patent)

94. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 93 of this Complaint as if fully set forth herein.

95. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 2, 7, 8, 14, 15, 16 and 20 of the '110 Patent.

96. The '110 Patent has 3 independent claims (claims 1, 8 and 15). Independent claim 1 is representative and reads as follows:

> 1. A bidirectional power converter comprising:
> a storage device for storing energy;
>
> a DC bridge, coupled to the storage device, for producing a high-frequency AC signal;

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

a resonant circuit, coupled to the DC bridge, having a resonant frequency proximate a frequency of the high-frequency AC signal;

a transformer coupled to the resonant circuit;

a switched mode cycloconverter, coupled to the transformer, for converting the high-frequency AC signal to a low-frequency AC signal; and

a controller, coupled to the DC bridge and the switched mode cycloconverter, for controlling the DC bridge and the switched mode cycloconverter to convert DC power from a DC power source coupled to the storage device into AC power at an output of the switched mode cycloconverter, wherein the AC power has a desired amount of reactive power component as determined by a reactive power control schedule comprising a schedule of reactive power to be generated as a function of one or more of AC grid voltage, bidirectional power converter output power, or change in AC grid voltage.

97. Sungrow has not infringed and does not infringe any valid claim of the ’110 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the ’110 Patent. By way of illustration all of the asserted claims require the presence and use of a “cycloconverter” and none of the identified or accused Sungrow products or systems use, contain or employe a “cycloconverter” as claimed in any of the asserted claims.

98. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’110 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’110 Patent.

99. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’110 patent, either directly or indirectly.

/ / /

/ / /

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

## COUNT TWELVE

### (Declaration of Invalidity of the '110 Patent)

100. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 99 of this Complaint as if fully set forth herein.

101. Claims of the '110 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants' theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to at least U.S. Publication No. 2012/300524A1, and the knowledge of a person of ordinary skill in the art.

102. Further, the asserted claims of the '110 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. At step one of the *Alice* framework, the claims are directed to an abstract idea: producing a "desired amount of reactive power" by following a schedule. That schedule is a list or rule stating how much reactive power to generate "as a function of one or more of AC grid voltage, bidirectional power converter output power, or change in AC grid voltage." Independent apparatus claim 1, method claim 8, and system claim 15 each end with this same "reactive power control schedule" limitation. The specification shows that this limitation is the only claimed point of novelty. It describes the problem as the failure of existing alternative-energy converters to "facilitate reactive power control." It explains that the claimed controller simply "receive[s] a power utility defined reactive power control schedule that is implemented by the power converter." In "one simple form," that schedule "may comprise a list of reactive power amounts and the time of day at which the reactive power is to be supplied." The schedule is supplied by the utility and drawn from an industry publication. It is then applied through a lookup and multiplication of values taken from stored "sine" and "cosine" tables. Following a predefined schedule or mathematical rule to decide how much of something to produce is a quintessential

abstract idea. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). Tying that idea to the technological setting of a power grid does not make it any less abstract.

103. At step two of *Alice*, the claims contain no inventive concept that turns this abstract idea into a patent-eligible application. Apart from the schedule limitation, each independent claim recites only a conventional resonant converter topology. That topology consists of a storage device, a DC bridge, a resonant circuit, a transformer, a switched mode cycloconverter, and a generic "controller." The specification admits that each of these elements and their arrangement were well known before the '110 Patent. It states that "[s]witched mode three-phase cycloconverters were described in literature as early as 1985." It also states that "[t]o facilitate DC to AC conversion, a DC full or half bridge circuit is coupled between a DC power source and the cycloconverter." It also states that the prior art already used a cycloconverter "that included a series-resonant circuit," where "a transformer center tap was used in conjunction with an LLC series-resonant circuit." It explains that cycloconverter operation is described in an earlier, commonly assigned patent application. It also describes the energy storage device as "[t]ypically" a capacitor used in prior converters. The claimed controller may be "any commercially available processor, microprocessor or microcontroller" or "a general purpose computer," and it runs "commercially available operating systems." The dependent claims add nothing inventive. They add only time-of-day lists and fixed values within the schedule, a "static VAr compensator" label, single-phase or three-phase operation, a battery as the DC source, and the step of "receiving" the schedule. Because the claims of the '110 Patent are directed to an abstract idea and recite no inventive concept, they are invalid under 35 U.S.C. § 101.

104. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the '110 Patent are invalid.

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

A judicial declaration is necessary to determine the parties' respective rights regarding the '110 Patent.

**COUNT THIRTEEN**

**(Declaration of Non-Infringement of the '408 Patent)**

105. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 104 of this Complaint as if fully set forth herein.

106. Defendant has alleged and continues to allege that Sungrow products infringe at least claims 1, 4, 5, 12, 18 and 21 of the '408 Patent.

107. The '408 Patent has 3 independent claims (claims 1, 12 and 21). Independent claim 1 is representative and reads as follows:

> 1. A method for establishing communication with a plurality of inverters, each of the inverters being configured to convert direct current (DC) power generated from an alternative source to alternating current (AC) power, the method comprising:
>
> determining an initial length of a response time window;
>
> broadcasting the initial length of the response time window to each inverter of the plurality of inverters to prompt each inverter to respond with corresponding identification data;
>
> in response to receiving a response from at least one inverter during the response time window, (i) recording the identification data of the at least one inverter and (ii) transmitting an acknowledgement to the at least one inverter using the identification data; and
>
> in response to the response time window expiring, (i) adjusting the length of the response time window and (ii) broadcasting the adjusted length of the response time window to each inverter of the plurality of inverters.

108. Sungrow has not infringed and does not infringe any valid claim of the '408 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused Sungrow products do not infringe any valid claim of the '408 Patent. By way of illustration none of the accused or identified Sungrow products "determine an initial length of a response time window" and then "broadcast" that window to each inverter in a grouping of inverters to cause an identification response from each inverter, or record inverter identification data and

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

transmit an acknowledgment, or adjusting or broadcasting the length of a response time window as set forth in the claims.

109. A substantial, immediate and real controversy exists between Sungrow and Defendant regarding whether Sungrow infringes the ’408 Patent by making, using, selling, and/or offering for sale the Accused Products in the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’408 Patent.

110. Sungrow seeks a judgment declaring that Sungrow has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of ’408 patent, either directly or indirectly.

**<u>COUNT FOURTEEN</u>**

**(Declaration of Invalidity of the ’408 Patent)**

111. Sungrow restates and incorporates by reference the allegations in paragraph 1 through 110 of this Complaint as if fully set forth herein.

112. Claims of the ’408 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. §1, including but no limited to §§ 101, 102 and/or 103. For example, at least under Defendants’ theory of infringement, the asserted claims are invalid under § 102 and/or 103 in view of the prior art, including but not limited to JP2010/178314A and/or US Patent No. 4,940,974, and the knowledge of a person of ordinary skill in the art.

113. Further, the asserted claims of the ’408 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and claim nothing more. At step one of the *Alice* framework, the claims are directed to the abstract idea of taking a roll call. That is, they claim announcing a deadline for responses, recording who answers, confirming receipt, and repeating the call with a revised deadline until no one else answers. Independent method claim 1, controller claim 12, and machine-readable-media claim 21 each recite the same steps in purely functional terms. Each

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

claim requires (1) "determining an initial length of a response time window," (2) "broadcasting" that length to each inverter "to prompt each inverter to respond with corresponding identification data," (3) "recording the identification data" of responding inverters and "transmitting an acknowledgement," and (4) after the window expires, "adjusting the length of the response time window" and "broadcasting the adjusted length." A teacher calling the roll, or a meeting organizer collecting RSVPs, does the same thing with pencil and paper. The specification confirms that the claimed advance is only this information-gathering process. It identifies the problem as the fact that "the identity and number of inverters used is unknown and/or may change over time." The claimed solution is a "discovery process to identify each inverter . . . and obtain the information necessary to directly communicate with each inverter." The Federal Circuit has repeatedly held that claims to collecting, recording, and transmitting information are directed to an abstract idea, including where the information concerns electrical systems or network devices. *See Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016). That the information here identifies solar inverters is only a field-of-use limitation, and it does not make the claims any less abstract.

114. At step two of *Alice*, the claims contain no inventive concept that turns this abstract idea into a patent-eligible application. The claims recite only a generic "communication circuit," "processor," "memory," and "machine-readable media," each performing its ordinary function. The specification describes these components in purely generic terms. The processor "may be embodied as any type of processor capable of executing software/firmware, such as a microprocessor, digital signal processor, microcontroller, or the like." The memory may be ordinary DRAM, SDRAM, or flash memory. The communication circuit "may use any suitable power line communication protocol," such as the existing "CENELEC B band" protocol, or alternatively "a wired or wireless communication protocol." The specification also states that the initial window length may be set by "any suitable algorithm," including

simple multiplication (for example, “500 milliseconds*200 modules”), or may simply be “an arbitrary, large length of time.” Notably, the independent claims do not even require the inverters to choose a random response time. That is the only feature the specification credits with “reducing the likelihood of communication collisions,” and the claims omit it. The dependent claims add nothing inventive. Because the claims of the ’408 Patent are directed to an abstract idea and recite no inventive concept, they are invalid under 35 U.S.C. § 101.

115. A substantial, immediate, and real controversy exists between Sungrow and Defendant regarding whether claims of the ’408 Patent are invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’408 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Sungrow prays for judgment and relief as follows:

A. Declaring that Sungrow has not infringed and is not infringing any valid claims of the Patents in Suit;

B. Declaring that the asserted claims of the ’884, ’454, ’256, ’642, ’270, ’110, and ’408 Patents are invalid or are otherwise unpatentable or ineligible for patent protection;

C. Permanently enjoining Defendants and all those acting through or for them, directly or indirectly, from asserting the Patents in Suit against Sungrow or any third party based on any alleged use of Sungrow’s accused products;

D. Declaring that judgment be entered in favor of Sungrow and against Defendant on each of Sungrow’s claims;

E. Finding that this is an exceptional case under 35 U.S.C. §285;

F. Awarding Sungrow its costs, expenses, and attorneys’ fees in connection with this action; and

G. Such other and additional relief as the Court deems just and proper.

/ / /

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

HOLLAND & KNIGHT LLP
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel: (310) 201-8900

## JURY DEMAND

Sungrow demands a jury trial on all issues and claims so triable.

Dated: November 2, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Amy E. Simpson*
Amy E. Simpson
Terrance Wikberg, *pro hac vice forthcoming*
Morgan J. Delabar, *pro hac vice forthcoming*

Attorneys for Plaintiff
SUNGROW USA CORPORATION